IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOLORES GREEN

      v.                        :     Civil Action No. DKC 21-0517

THE TJX COMPANIES, INC.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is a motion to dismiss filed by Defendant The TJX Companies, Inc. ("TJX").  (ECF No. 6).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss will be granted.

**I.  Background**

Plaintiff Dolores Green worked for T.J. Maxx, a retail store owned and operated by TJX, (ECF No. 7, at 1), in 2019.  (ECF No. 1, at 3, 5-6).  It appears she no longer works there.  (ECF No. 1-1, at 1).  Ms. Green's primary claims center on her alleged disability.  She is "no[t] able to stand for long periods of time" or to "reach up high."  (ECF No. 1, at 5-6).  To accommodate that alleged disability, she requested that she be able to "sit as needed on [] counter height seating" to perform her duties, which include "cashiering" and "cover[ing] various departments," without

stopping.   (*Id.*, at 5).   The request was approved in April 2019 and she was able to use a stool.   (*Id.*, at 6, 9).

The next week, however, Ms. Green was told by a manager that she "was not going to sit around them."   (ECF No. 1, at 6).   She may also have been sent home.   (*See id.*, at 6, 9).   Ms. Green, who is black, alleges generally that she was tormented, humiliated, harassed, and embarrassed daily by her co-workers because of her inability to stand, her need to use a chair, and her race.   (*Id.*, at 5-6, 9).   After "almost a year," her stool "purposely disappear[ed]" but no one knew what happened to it.   (*Id.*, at 9).

Ms. Green filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in May 2020, checking the box for disability discrimination and indicating the discrimination took place between November 1, 2019 and February 1, 2020.   (ECF No. 6-2, at 2).   Ms. Green's charge includes details not alleged in her complaint, including that her stool was taken in November 2019 by a store manager named Ariana.   (*Id.*).   Its loss caused health issues requiring Ms. Green to take sick leave.   (*Id.*).   Although she attempted to return to work, she could not tolerate the harassment and inability to sit.   (*Id.*).   The EEOC issued a notice of right to sue letter on December 3, 2020.   (ECF No. 1-2, at 1).

Ms. Green filed this lawsuit without a lawyer in February 2021, asserting Americans with Disabilities Act ("ADA") claims for

failure-to-accommodate and retaliation, and for race discrimination and retaliation. (ECF No. 1, at 4-5). Ms. Green's complaint may also assert claims for a hostile work environment under the ADA, and for a racially hostile work environment. (*See id.*, at 5-6, 9). Her race-based claims arise under Title VII. Ms. Green requests compensatory damages and an order requiring TJX to conduct disability-sensitivity and racial-bias training. (*Id.*, at 7). TJX filed a motion to dismiss in April 2021. (ECF No. 6).

TJX argues that Ms. Green failed to exhaust administrative remedies for all but her ADA failure-to-accommodate claim. Specific to her ADA claims, it argues that she has not identified her disability, the essential functions of her job, or how TJX failed to accommodate; that she has not pleaded severe or pervasive harassment based on disability; and that she has not alleged any protected activity or adverse action necessary for a retaliation claim. Ms. Green opposed, TJX replied, and Ms. Green supplemented her opposition without court approval. (ECF Nos. 10; 11; 12).

Ms. Green's opposition and supplement also include factual details not alleged in her complaint. She expands on the duties she had at T.J. Maxx, which also included working at the jewelry counter and in the fitting room. (ECF No. 12, at 7). She "spot[ted] shoplifters," trained and welcomed new hires, and often stayed late. (ECF No. 10, at 5). Ms. Green states that "she is no longer able to stand for 12 hours a day," her body "is not what

it used to be," and "some days [she] can barely walk." (ECF Nos. 10, at 4, 6; 12, at 14). Her physicians confirmed that she "could no longer stand and reach for long periods" and must "sit a[s] needed." (ECF Nos. 10, at 4; 12, at 1). She needed a counter-height stool "so [she] could check out the customers at checkout, and work extra hours." (ECF Nos. 10, at 1; 12, at 7).

T.J. Maxx never gave Ms. Green a stool. (ECF Nos. 10, at 2; 12, at 4). Instead, she used a stool from the sales floor and stored it near the registers. (ECF No. 10, at 1-2). This had been allowed when other employees were sick or injured. (ECF No. 10, at 2). The stool made it possible for Ms. Green to do her job and helped her walk better. (ECF Nos. 10, at 2; 12, at 6). After the stool "disappeared," Ms. Green inquired about it and was ignored. (ECF Nos. 10, at 1; 12, at 10). When she reached someone at HR, she was told she "could have brought [a] stool from home." (ECF No. 10, at 3). Ms. Green also "caught hell" from her co-workers after her accommodation was approved. (ECF Nos. 10, at 5; 12, at 9). Sometimes they would sit on the stool while Ms. Green was on it. (ECF No. 10, at 5). They discussed her disability in front of customers. (ECF Nos. 10, at 6; 12, at 5). And two managers sent her home after denigrating her use of the stool, which she discussed with HR. (ECF Nos. 10, at 1; 12, at 1-3).

4

**II.   Motion to Dismiss**

    **A.    Standard of Review**

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). A plaintiff's complaint need only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" A Rule 8(a)(2) "showing" still requires more than "a blanket assertion[] of entitlement to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007), or "a formulaic recitation of the elements of a cause of action[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).

Unrepresented parties' pleadings are liberally construed and held to a less strict standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted). Liberal construction means that courts will read the pleadings to state a valid claim to the extent that it is possible to do so

from the facts available; it "does not mean overlooking the pleading requirements[.]"  *See Bing v. Bravo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020) (citation omitted); *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  Where an unrepresented plaintiff's complaint must be dismissed, courts should provide "notice of the deficiencies" so that the plaintiff can "use[] the opportunity to amend effectively."  *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

Ms. Green's EEOC charge is taken into consideration because it is "integral to the complaint and authentic[.]"  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Cuffee v. Verizon Commc'ns, Inc.*, 755 F.Supp.2d 672, 676 & n.2 (D.Md. 2010) (considering defendant attached EEOC charge).  As noted above, Ms. Green included additional allegations in her charge (which she did not attach to her complaint) and includes new allegations in the opposition and a supplement to her opposition. A plaintiff cannot amend her complaint through an opposition, but certain allowance should be made because Ms. Green is unrepresented. *See Erickson*, 551 U.S. at 94.  The additional facts in Ms. Green's charge, opposition, and supplement will be considered to determine whether she should have the opportunity to request leave to amend if her complaint is dismissed.

    **B.**    **ADA**

    **1.**    **Failure to Accommodate**

To state a failure-to-accommodate claim, a plaintiff must allege that (1) she had a disability within the meaning of the ADA, (2) the employer had notice of this disability, (3) with reasonable accommodation she could perform the essential functions of the position; and (4) the employer refused to make such accommodations. *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013); *see also* 42 U.S.C. §§ 12102(1); 12111(8), (9); 12112(a), (b)(5)(A). TJX does not argue that it was not on notice to Ms. Green's alleged disability.

    **a)**    **Disability**

The ADA defines individual "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). These three routes are sometimes referred to as the "actual disability prong," the "'record of' prong," and the "'regarded as' prong." *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 329 (4th Cir. 2014). Congress has made clear that "the definition of disability 'shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by its terms.'" *Id.* (quoting 42 U.S.C. § 12102(4)(A)). Ms. Green does not allege a record of impairment or any facts to suggest

that others regarded her as having a disability.  She must proceed,

then, under the "actual disability prong."

Courts often divide the "actual disability" analysis into

three parts:   (1) a physical or mental impairment, (2) that

substantially limits, (3) a major life activity.  *Bragdon v.*

*Abbott*, 524 U.S. 624, 631 (1998).  "Impairment" and "major life

activity" are capacious terms.  The ADA does not define physical

or mental impairment but EEOC regulations define it to include:

"[a]ny physiological disorder or condition, cosmetic

disfigurement, or anatomical loss affecting one or more body

systems," such as the musculoskeletal system.   29 C.F.R.

§ 1630.2(h)(1).  The ADA defines major life activity to include

performing manual tasks, walking, standing, and working.  42 U.S.C.

§ 12102(2)(A).

"Substantially limit" can require more careful line drawing

but is "not meant to be a demanding standard" and should be

construed consistent with the "liberalizing purposes" of the ADA

Amendments of 2008 ("ADAA").  *See Summers*, 740 F.3d at 329 (quoting

42 U.S.C. § 12102(4)(B); 29 C.F.R. § 1630.2(j)(1)(i)).  The term

is not defined by the ADA, but EEOC regulations suggest helpful

rules of construction.  "An impairment need not prevent, or

significantly or severely restrict, the individual from performing

a major life activity in order to be considered substantially

limiting." 29 C.F.R. § 1630.2(j)(1)(ii). "Nonetheless, not every impairment will constitute a disability[.]" *Id.*

The "substantiality" determination requires an individualized assessment that compares a plaintiff's alleged limitations to those faced by most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii), (iv). In doing so, it is often helpful to consider "the difficulty, effort, or time required to perform [the] major life activity; pain experienced when performing [it]; the length of time [it] can be performed; and/or the way an impairment affects the operation of a major bodily function." *Id.* § 1630.2(j)(4)(ii).

Ms. Green's complaint identifies at least one major life activity that is limited but says very little about how it is limited and nothing at all about her underlying impairment. Ms. Green alleges she is unable to stand for long periods and needs a chair to be able to work as a cashier. (ECF No. 1, at 6).[1] Without more, that is not enough to state a failure-to-accommodate claim. It is possible to draw inferences about how substantially limiting an alleged disability is based on the impairment at issue. *See, e.g.*, 29 C.F.R. § 1630.2(j)(3)(ii)-(iii) (blindness, cancer, and diabetes); *McFadden v. Biomedical Sys. Corp.*, No. 13-cv-4487, 2014

---

[1] Ms. Green's complaint may suggest that she is limited in other major life activities including performing manual tasks, walking, and working.

WL 80717, at *3 (E.D.Pa. Jan. 9, 2014) (herniated disks).  It might also be possible to infer that a physical or mental impairment is at issue from the nature and severity of the limitations alleged. But it is too much to identify solely the major life function limited and ask a court to infer the rest.

Caselaw and regulatory guidance demonstrate that a limit on one's ability to stand may be substantial in some cases and not in others.  The result often comes down to how long the individual can stand for, how severe the symptoms impeding standing are, and what kind of rest she needs to alleviate her symptoms.  *See Wilson v. Bd. of Educ. of Prince George's Cnty.*, No. 12-cv-2092-AW, 2013 WL 3146935, at *6-7 (D.Md. June 18, 2013) (discussing, at summary judgment, the medical diagnosis, required accommodation, and frequency of rest); *EEOC v. Sharp Mfg. Co.*, 534 F.Supp.2d 797, 802-03 (W.D.Tenn. 2008) (discussing pre-ADAA cases).  The EEOC provides a helpful example:  a person whose impairment "precludes him or her from standing for more than two hours without significant pain would be substantially limited in standing, since most people can stand for more than two hours without significant pain."  29 C.F.R. § 1630.2(j)(4)(Appendix).  "However, a person who can walk for ten miles continuously is not substantially limited in walking merely because on the eleventh mile, he or she begins to experience pain because most people would not be able to walk eleven miles without experiencing some discomfort."  *Id.*

As currently alleged, Ms. Green's complaint does not include any details that would support an inference that her limitation was substantial.   Most people would experience discomfort if required to stand for long periods.   She does not allege how long she can stand for before she needs to rest.   Her reasonable accommodation—using a chair—does not suggest she experiences more discomfort than average.  *Compare with Fowler v. UPMC Shadyside*, 578 F.3d 203, 213-14 (3ᵈ Cir. 2009) (holding that exclusive sedentary work can support substantiality).   She does not allege that she experienced severe pain after standing for long periods. And she does not allege that she required extended breaks to recuperate.   Ms. Green must do more to indicate that she suffers from a disability and not a common affliction.

**b)   Reasonable Accommodation Necessary to Performing Essential Functions**

"This inquiry proceeds in two steps.  First, was the specific accommodation requested by [the employee] reasonable?  Second, had the [employer] granted the accommodation, could [the employee] perform the essential functions of the position?"  *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 580 (4ᵗʰ Cir. 2015) (citation omitted).   "A reasonable accommodation is one that "enables [a qualified] individual with a disability . . . to perform the essential functions of [a] position."   *Id.* (citing 29 C.F.R. § 1630.2(o)(1)(ii)).    This   may   include   "acquisition   or

modification of equipment or devices."   42 U.S.C. § 12111(9)(B).

Essential functions are "fundamental job duties" and do not include

"marginal functions."   29 C.F.R. § 1630.2(n)(1).

Ms. Green has met this requirement.  A chair can certainly be

a reasonable way to accommodate a disability.   *See Dones v.*

*Donahoe*, 987 F.Supp.2d 659, 669-70 (D.Md. 2013).   Ms. Green

identifies as her jobs "cashiering" and "cover[ing] various

departments."  (ECF No. 1, at 5).   While Ms. Green does not allege

her specific duties within these jobs, it is reasonable to infer

that "cashiering" requires being positioned at a cash register for

extended period and that this is fundamental to the job.  Ms. Green

alleges that she needs a counter-height chair "to perform" this

task without stopping.   (*Id.*).   At the motion-to-dismiss stage,

that is enough.

   **c)     Employer Refusal**

Ms. Green adequately pleads that TJX refused her requested

accommodation.   She alleges that the company approved her

accommodation, that almost a year later the stool she requested

went missing, and that generally she was ignored by, or faced

hostility from, her superiors.   While certainly not a model

complaint, that is enough to infer that Ms. Green notified her

superiors about the loss of her accommodation and that they failed

to do anything to rectify the situation.

TJX's motion to dismiss the ADA failure-to-accommodate claim will nevertheless be granted because Ms. Green does not allege enough facts to support an inference that she is disabled, as discussed above.  Ms. Green will have twenty-one (21) days to file an amended complaint that explains exactly what impairment she suffers from and how severe it is.  To the extent she is able, Ms. Green should include details on what symptoms she has after she stands, how long it takes to experience those symptoms, and what she needs to do to alleviate her symptoms.  She may also include any details about symptoms that affect her ability to walk and to reach for items while working at the cash register.

An amended complaint replaces the original complaint. Accordingly, Ms. Green should include all factual allegations that are in her current complaint if she wishes them to be considered. Then she should add any further allegations she can so that the amended complaint may stand alone.

### 2.   Hostile Work Environment

### a)   Timeliness

The ADA incorporates the Title VII requirement that a plaintiff file a charge of discrimination with the EEOC before filing suit in federal court.  *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012) (citing 42 U.S.C. § 12117(a)).  This exhaustion requirement includes a limitations period.  In deferral states, like Maryland, the limitations period is 300 days from the

date of the alleged discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1). "A charge alleging a hostile work environment claim [] will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). Generalized allegations of harassment cannot support an inference that at least one such act occurred during the required timeframe. *See Maiden v. Cnty. of Albermarle*, No. 09-cv-0034, 2009 WL 2511951, at *4 (W.D.Va. Aug. 17, 2009).

Ms. Green has not alleged that her hostile-work-environment claim is timely because she does not plead any discrete acts of harassment in the 300-day period before she filed her EEOC charge, July 8, 2019 to May 3, 2020. The sole act specifically pleaded is that Ms. Green was told by two managers in May 2019 that she "was not going to sit around them." (ECF No. 1, at 6). Ms. Green otherwise only alleges generally that she was harassed and humiliated by her co-workers. This suggests, however, that Ms. Green may be able to allege that her claim was timely by identifying in an amended complaint discrete acts in the 300-day window. The court therefore considers TJX's substantive challenges to Ms. Green's claim.

**b)    Adequacy of Allegations**

To state a hostile-work-environment claim under the ADA, a plaintiff must allege: "(1) [s]he is a qualified individual with a disability; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on h[er] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001) (citing 42 U.S.C. § 12112(a)).  Ms. Green fails to plead that she has a disability, for the same reasons as discussed above.  TJX argues that Ms. Green also failed to allege that her harassment was based on her disability or that it was severe or pervasive.  It does not argue that she failed to allege that she was subject to unwelcome harassment at all, or that liability can be imputed to TJX.

Negative comments about an employee's reasonable accommodation can support an inference that alleged harassment was based on the employee's disability.  For what little harassment Ms. Green alleges specifically, she has done enough to plead that it was based on her disability because she alleges negative comments based on her use of a stool.  The allegation that Ms. Green's co-workers told her that she "wasn't going to sit around them" were plausibly targeted at, and derisive toward, Ms. Green's alleged disability.

But Ms. Green has not pleaded enough to suggest that the harassment was severe or pervasive because she has provided so little detail.  Harassment is sufficiently severe or pervasive if it creates an "'environment [that] would reasonably be perceived, and is perceived, as hostile or abusive.'"  *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)).  "Th[e] determination is made 'by looking at all the circumstances,' which 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Id.* (quoting *Harris*, 510 U.S. at 23).

Ms. Green specifically pleads only the one potentially harassing comment discussed above.  On its own, that comment is not sufficiently severe.  Although it was likely hurtful to Ms. Green, the comment did not amount to an "extremely serious" incident.  *See Boyer-Liberto*, 786 F.3d at 278 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  Ms. Green's other allegations are generalized and conclusory.  She was allegedly tormented, humiliated, harassed, and embarrassed daily by her co-workers.  Nowhere, however, does she specify what her co-workers did to harass and embarrass her.  She does not detail specific comments or describe offensive actions.  Ms. Green has not

plausibly painted a picture of a workplace "permeated with discriminatory intimidation, ridicule, and insult." *Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009) (quotation omitted).

Any amended complaint must specify, to the extent Ms. Green is able, acts of harassment that occurred between July 8, 2019 and May 3, 2020. She should provide detail on the things her co-workers said and did to humiliate, embarrass, and harass her. Ms. Green should also detail what, if anything, she did to alert T.J. Maxx to the harassment she faced.

### 3.   Retaliation

As noted above, the ADA incorporates Title VII's requirement that a plaintiff file a charge of discrimination with the EEOC before filing suit in federal court. The purpose of this exhaustion requirement is to put employers on notice to potential misconduct and afford them the opportunity to remedy it with the complaining employee more quickly and efficiently than litigation allows. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). "If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (citation omitted). But a suit may not present entirely new factual bases or entirely new theories of liability from those set forth in the

17

initial EEOC charge.  *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963-64 (4th Cir. 1996).

Ms. Green did not exhaust her ADA retaliation claim.  She did not check the box for retaliation and the description in her charge does not mention that she complained about unlawful conduct.  *See Miles v. Dell, Inc.*, 429 F.3d 480, 491-92 (4th Cir. 2005) (holding plaintiff failed to exhaust when she "did not check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation").  TJX was not put on notice to Ms. Green's ADA retaliation claim, and it will be dismissed.  The court need not reach TJX's alternative argument that Ms. Green fails adequately to state the retaliation claim.  Ms. Green will not be able to move for leave to amend her ADA retaliation claim because her allegations occurred entirely before she filed her EEOC charge and any new allegations would also be unexhausted.

### C.    Title VII

### 1.    Exhaustion

Title VII requires a plaintiff to exhaust her claims with the EEOC before filing suit in federal court, as discussed above. 42 U.S.C. § 2000e-5(e)(1), (f)(1).  Ms. Green did not exhaust her Title VII race-based claims either.  She checked only the box for disability discrimination and did not check the boxes for race or color discrimination.  Race is not mentioned in any way in her description of her charge.  TJX was not put on notice to Ms.

18

Green's Title VII race discrimination, hostile-work-environment, and retaliation claims, and they will be dismissed.  The court need not reach TJX's alternative argument that Ms. Green fails adequately to state any of these claims.  Ms. Green will not be permitted to move for leave to amend her Title VII claims given that her EEOC charge did not mention race at all, and those claims may not be asserted here for the first time.

**III. Conclusion**

For the foregoing reasons, TJX's motion to dismiss will be granted.  Ms. Green will have twenty-one (21) days to file a motion for leave to amend her complaint in accordance with this memorandum opinion.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
